**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Chester Straley,   Case No. 3:3:12CV442

    Plaintiff

    v.   **ORDER**

Commissioner of Social Security,

    Defendant

This is an appeal from a Report and Recommendation from Magistrate Judge Vernelis K. Armstrong affirming the Commissioner of Social Security's denial of disability insurance benefits and supplemental security income under the Social Security Act, 42 U.S.C. §§ 416 (i), 423, and 1381.

Plaintiff has filed objections to the Magistrate Judge's Report and Recommendation. (Doc. 21). He argues the Magistrate Judge erred in finding that the administrative law judge (ALJ): 1) accurately determined his residual functional capacity (RFC) and 2) harmlessly omitted his diagnosis of cervical radiculopathy.

This court exercises jurisdiction over the final decision of the Commissioner pursuant to 42 U.S.C. § 405 (g) and 42 U.S.C. § 1383 (c)(3). *McClanahan v. Comm'r of Soc. Sec.,* 474 F.3d 830, 832-33 (6th Cir. 2006).

For the reasons that follow, I agree with the plaintiff's objections to the Magistrate Judge's

1

Report and Recommendation. Accordingly, I vacate the decision below and remand to the ALJ to redetermine Straley's RFC taking into consideration his cervical radiculopathy and accompanying functional limitations.

**Background**

In September, 2006, plaintiff, Charles Straley, was working as an electrician. While crossing an overhead walkway, the scaffolding broke. Straley fell eight feet into a vat of chromic acid. Metal grating pinned Straley against the side of the vat.

Straley went to the emergency room the day after the incident. Doctor Wisser performed a CT scan of his abdomen and pelvis and x-rayed his shoulder. The test results indicated no acute injury to his abdomen, pelvis, or shoulder.

A month after the incident, Straley went back to Dr. Wisser complaining of left shoulder pain. Dr. Wisser performed an MRI, which indicated, *inter alia*, a partial rotator cuff tear. Dr. Wisser referred Straley to Dr. Muha.

Dr. Muha tried a conservative course of care including physical therapy and steroid injections. When this was unsuccessful, he recommended Straley undergo surgery. In July, 2007, Dr. Muha performed the surgery. Within a few months Straley indicated he felt definite improvement.

After surgery Straley told Dr. Muha that he expected to return to work by the end of the year. However, in December, 2007, Straley still felt unable to return to work. Dr. Muha referred him to Dr. Wray for further treatment.

Dr. Wray ordered an EMG of Straley's shoulde. According to Dr. Wray, the EMG showed either suprascapular nerve injury or cervical radiculopathy. She believed suprascapular nerve injury

to be more consistent with Straley's history. In March, 2008, after obtaining the EMG results Dr. Wray suggested Straley revisit Dr. Muha.

In July, 2008, Straley revisited Dr. Muha complaining of pain radiating between his shoulder and his neck as well as numbness and tingling. Dr. Muha noted the neurological symptoms and did not rule out either suprascapular injury or cervical radiculopathy. However, he indicated further surgery was not necessary at that time.

In September, 2008, a physical therapist performed an in-person RFC assessment. According to the therapist, Straley had limited external rotation of his left upper extremity, but still, he could lift twenty-three pounds floor to waist; carry thirty-seven pounds for twenty feet; tolerate five minutes of primarily left-handed overhead reaching with two- three pounds of weight; and stand and walk freely. The therapist concluded Straley could not perform the lifting required of him as a maintenance electrician.

In December, 2008, Dr. Holbrook performed a second in-person RFC assessment. Dr. Holbrook concluded, *inter alia*, that Straley could: 1) sit or stand for six hours if allowed to periodically alternate between sitting and standing to relieve pain; 2) occasionally push or pull with his right upper extremity; 3) perform limited to occasional handling with his left arm; and 4) never reach overhead.

Straley returned to Dr. Wray's office in December, 2008, October, 2009, and in January and July, 2010. On each visit Dr. Wray noted the possibility of muscular atrophy. During one visit Dr. Wray noted less bulk in the left shoulder muscle than the right. She also noted more than once that all but severe atrophy would be difficult to observe because of Straley's excess soft tissue.

After submitting a C-9 Straley received permission to visit a pain management clinic for

3

further treatment of his shoulder. He continued to complain of pain, numbness, and tingling in his left arm and shoulder. Straley also stated he was experiencing paresthesis in his left thumb, index, and long finger.

Doctors Sohn, Weldy, and Elgafy all examined him. In September, 2010, Dr. Sohn added a diagnosis of joint inflammation and impingement. He noted Straley experienced numbness over his entire left shoulder. Shortly thereafter, Dr. Elgafy evaluated Straley and definitively diagnosed him with cervical radiculopathy. The following month, after performing an additional MRI, Dr. Elgafy also discovered an aggressive bony regrowth of the distal clavicle. Dr. Elgafy submitted a C-9 for both diagnoses. He suggested Straley undergo a bursectomy, left shoulder revision, distal clavicle excision, and possibly debridement of his rotator cuff tear after getting approval.

During his social security hearing, Straley's attorney indicated Straley has seventy percent nerve damage in his left shoulder.

According to Straley, he has almost constant pain radiating from his neck to his left hand.

Straley testified at length about how his nerve damage impairs his functioning. He stated he cannot do dishes because he is unable to lift anything above his head. He cannot drive a car because turning the steering wheel causes too much pain. He loses his grip if he tries to grab the handle of a milk jug that is too full. He can no longer hold a pencil with his left hand, so he is learning to use his right.

Although Straley indicated that he could walk two or three miles, he stated he could not sit for more than fifteen to twenty minutes at a time without standing for another fifteen to twenty minutes to relieve pain in his arm. While in class he frequently has to get up and lean against the wall to relieve discomfort.

Straley also testified that he is unable to sleep for more than two to three hours at a time. As a result of his lethargy and pain medication, he often forgets to pay bills and has trouble concentrating for extended periods of time. On days when he is not taking classes he alternates hot and cold packs and tries to make himself as comfortable as possible.

After Straley's testimony, the ALJ posed a hypothetical question to the vocational expert. The ALJ described an individual who was capable of, *inter alia*: 1) sitting or standing for six hours in a work day, but needed to alternate sitting and standing; 2) using his left upper extremity for limited overhead reaching; and 3) using his left hand on a limited basis for gross manipulation.

The vocational expert indicated that an individual with the those functional limitations could find work as a sorter or inspector.

After listening to the vocational expert's opinion, Straley's attorney asked the vocational expert if the sorter or inspection positions would be available for an individual who, in addition to the aforementioned limitations, was also off task two times an hour for five to seven minutes each time.

The vocational expert stated that an individual who required such breaks would be unable to find any employment.

As of the date Straley filed his complaint in this court, January 1, 2013, the workers compensation board had yet to approve his claims for cervical radiculopathy and bony regrowth of his shoulder bone. As such, he has not been able to receive the recommended treatment for these diagnoses.

**Standard of Review:**

I review *de novo* those portions of a Report and Recommendation to which objections have

been made. Fed. R. Civ. P. 72(b). In conducting judicial review, I must affirm the Commissioner's conclusions if the Commissioner applied the correct legal standards and made findings of fact supported by substantial evidence. *Id.* (*citing Branham v. Gardner*, 383 F.2d 614, 626-27 (6th Cir. 1967)). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McClanahan*, 474 F.3d at 833 (*citing Besaw v. Sec'y of Health and Human Servs.*, 966 F.2d 1028,1030 (6th Cir. 1992)). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir.1993).

## Discussion

Straley argues the Magistrate Judge erred in determining that there was substantial evidence to support: 1) the ALJ's RFC determination and 2) the hypothetical she posed to the vocational expert. According to Straley, the ALJ's erroneous hypothetical to the vocational expert, which mirrored her erroneous RFC, prohibited the vocational expert from fairly determining whether he could find employment.

Straley also objects to the Magistrate Judge's harmless error determination. Straley argues the ALJ's failure to list his cervical radiculopathy and suprascapular nerve injury as severe impairments cannot be considered harmless. According to Straley, because the ALJ failed to consider his diagnosis as severe impairments, she also failed to include the functional limitations associated with these disorders in her RFC. As such, Straley's second objection is part and parcel of his first objection that there is not substantial evidence to support the ALJ's RFC.

"[A claimant's] RFC is to be an assessment of [his] remaining capacity for work once [his] limitations have been taken into account." *Howard v. Comm'r of Social Sec.,* 276 F.3d 235, 239 (6th Cir. 2002) (internal citations and quotations omitted). In determining a claimant's RFC, an ALJ must consider all relevant medical and other evidence in the record, including a claimant's own description of his impairments and symptoms. 20 C.F.R. § 20.1545 (a)(3).

"[A] denial of benefits based upon an ALJ's improper calculation of a claimant's residual functional capacity, a description of what the claimant can and cannot do, must be reversed." *Webb v. Comm'r of Social Sec.,* 368 F.3d 629, 631 (6th Cir. 2004) (internal citations omitted). Similarly, if an ALJ fails to consider "the entirety of the claimant's medical record in calculating [his] residual functional capacity, the denial of benefits [must] be reversed." *Id.* at 632 (internal citations omitted). Although hypotheticals simulating a claimant's RFC need not list a claimant's medical conditions, they must accurately portray what the claimant can and cannot do. *Id.*

The Magistrate Judge is correct that after considering the entire medical record, an ALJ is free to accept some findings of medical doctors and reject others determined to be inconsistent with the record as a whole.

However, I do not believe the ALJ adequately reviewed the most recent portion of Straley's treatment record. In particular, I take issue with the ALJ's one paragraph discussion of Straley's treatment by Doctors Sohn and Elgafy. In this cursory discussion, the ALJ completely omitted Straley's cervical radiculopathy diagnosis.

Moreover, the ALJ ignored completely the numerous cervical radiculopathy symptoms noted in Straley's treatment records. Dr. Wray discussed muscular atrophy at multiple examinations. Dr. Muha noted numbness and tingling when he examined Straley after his first EMG. Dr. Sohn noted

7

numbness over Straley's entire left shoulder blade.

The ALJ also disregarded Straley's own complaints to doctors and his testimony at the hearing respecting his left hand. According to the ALJ, Straley's claims respecting his left hand were not credible because "the objective evidence shows that he has been treated successfully with medication, surgery, physical therapy, and a TENS unit."

This is simply not the case. The record shows that until Straley's visits with Doctors Sohn and Elgafy, his doctors had primarily been treating what they believed to be symptoms of a rotator cuff tear and a suprascapular nerve injury. Although Doctors Wray and Muha noted symptoms of the cervical radiculopathy, it was their opinion that the suprascapular nerve injury was more likely the cause of Straley's pain. As such, the ALJ's contention that Straley's previous treatments would have relieved the symptoms in his hand are unreasonable. He is still awaiting approval for the procedures necessary to treat his cervical radiculopathy.

The ALJ also stated she discredited Straley's subjective complaints of neck pain and hand numbness because he: 1) only recently began complaining of the cervical radiculopathy symptoms and 2) had previously indicated to a doctor that he did not want to return to work and be transferred down south.

The evidence in the record belies both of the ALJ's credibility contentions.

Straley did not suddenly begin complaining about neck pain and below the elbow symptoms shortly before his hearing. The record indicates Straley began complaining of numbness and tingling at least as early as his 2008 visit with Dr. Muha. Straley's most recent complaints of paresthesis in his left thumb, index, and long finger, to which the ALJ refers in her opinion, merely built on his earlier reported cervical radiculopathy symptoms.

Moreover, the record reflects that Straley told Dr. Wray he was actively seeking employment. It may be true that Straley did not pursue his old position, which would have required him to drive more than forty minutes one-way. However, at his hearing, Straley testified that he has difficulty turning a steering wheel. Accordingly, his remark to his doctor about not returning to his previous position merely confirms the reality of his physical limitations. It does not reflect negatively on his credibility.

In my opinion in *Blackledge v. Comm'r,* Case No. 3:11 CV 2258 (Dec. 26, 2012), I stated that if a claimant's condition fluctuates or worsens over time, it is unreasonable to amend a more recent medical evaluation so that it conforms with an older evaluation.

Accordingly, I cannot agree that it was reasonable for the ALJ to discount the medical diagnosis, recorded symptoms, and Straley's personal complaints because they were inconsistent with a 2008 residual functional assessment. That assessment indicated Straley could occasionally lift twenty-three pounds overhead and frequently lift eleven pounds overhead with his left arm. However, the later residual functional assessment limited Straley to no overhead reaching and imposed stricter functional limitations.

In this case, Doctors Sohn and Elgafy, each of whom assessed Straley on more than one occasion, ordered a new EMG and MRI in 2010. As the doctors noted, Straley's previous tests were over four years old. Based on the new test results, the doctors concluded, in addition to having a suprascapular nerve injury, joint impingement, and bony regrowth, Straley suffered from cervical radiculopathy. They submitted a C-9 for these diagnosis and plan to perform further surgery in the future.

In sum, I do not find that substantial evidence in the record supports the ALJ's RFC

assessment. In her hypothetical to the vocational expert, the ALJ failed to accurately portray Straley's functional limitations. She never incorporated his left-hand fine manipulation restrictions, nor did she include his sitting restrictions. In addition she erroneously represented that Straley was still able to lift overhead with his left arm. The picture the ALJ painted for the vocational expert portrayed a man with limitations much less severe than those from which Straley suffers.

Accordingly, after reviewing the record in its entirety, I cannot agree that substantial evidence supports the ALJ's denial of plaintiff's application for benefits.

## Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT: this case be, and it hereby is remanded for further proceedings not inconsistent with this Order.

So ordered.

/s/ James G.Carr
Sr. U.S. District Judge